Betty J. **BUCKLEY**, Plaintiff-Appellant,

v.

**COYLE PUBLIC SCHOOL SYSTEM et al.**, Defendants-Appellees.

No. 72–1520.

United States Court of Appeals, Tenth Circuit.

Submitted Jan. 11, 1973.

March 5, 1973.

Henry W. Floyd, Oklahoma City, Okl., and James I. Meyerson, NAACP, New York City (Nathaniel R. Jones, NAACP, New York City, on the brief), for plaintiff-appellant.

Thomas R. Williams, Guthrie, Okl., for defendants-appellees.

Before MURRAH, SETH and DOYLE, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

This is an appeal from the final judgment entered following the granting of defendants-appellees' motion for summary judgment. The plaintiff-appellant was a school teacher in the City of Coyle, Oklahoma Public School system. She was in her first year of employment and thus had no tenure. She was dismissed in accordance with a policy of the school system at the end of her sixth month of pregnancy. The action questioned the validity of this policy and of her termination pursuant to it.

The suit was brought under the Civil Rights Act of 1866 and of 1871, and also of 1964, Title VII.[1]

In granting summary judgment the district court dismissed the action in its entirety stating that neither appellant's constitutional rights nor her statutory rights had been violated and that she was entitled to neither injunctive relief nor damages. The specific conclusions and reasons of the trial court are as follows:

The Court is of the opinion that there was no discrimination against Plaintiff either because of race or sex; that the rule regarding pregnancy is reasonable and applies to all women; that the Civil Rights Act applies only to persons of a class who were helpless to prevent becoming a member of that class. Women are such a class; they are not responsible for their sex; they did not choose it. Pregnant women do not constitute such a class; they are only a segment of a class.

The Court concludes that Civil Rights under the Act, 42 U.S.C. 2000e(2) [2000e–2], are assertable only by persons of a designated class who had nothing to do with their condition, namely, race, color, religion, sex or national origin; that the Plaintiff did have something to do with respect to her pregnancy; she asserted her prerogative to become pregnant.

■ Since the trial court ruled that the action of the plaintiff-appellant was insufficient on its face and thus did not even merit preliminary inquiry, our problem is whether it does present a constitutional claim of sufficient substance to justify a hearing on the merits. We hold that the claim has apparent substance and more; that its nature and character are such as to make out a case of probable rather than merely possible recovery and, therefore, that it was error for the trial court to summarily throw it out, so to speak.

The plaintiff-appellant's contention is that the school policy calling for dismissal at the end of the sixth month of pregnancy discriminated against her solely on the basis of sex and in so doing violated the equal protection clause of the Fourteenth Amendment to the Constitution of the United States, plus the Civil Rights Act. She also maintains that she was discriminated against because of her exercise of First Amendment rights and also that she was the victim of discrimination based upon her color.

### I.

■ We start with the most obvious of the alleged violations and that is the

[1]. 42 U.S.C. § 1981; 42 U.S.C. § 1983; Civil Rights Act of 1964, Title VII; 42 U.S.C. § 2000e et seq. It is noteworthy that the Equal Opportunity Act now applies to public schools and that the EEOC has adopted a rule which prohibits special maternity leave as discriminatory on the basis of sex. *See* 29 C.F.R. § 1604.10(b) (1973). Admittedly, however, Title VII does not come into play here since the plaintiff-appellant has not exhausted her administrative remedies.

charge of discrimination based on sex. The trial court's attempted distinction between discriminatory and non-discriminatory regulations as being whether the condition involved is one which was involuntary must be rejected. The fact, if it be a fact, that pregnancy is a voluntary status really has nothing to do with the question. The point is that the regulation penalizes the feminine school teacher for being a woman and, therefore, it must be condemned on that ground.

Judge Brown dissented in one of the earlier cases, Phillips v. Martin-Marietta Corp., 416 F.2d 1257, 1259 (5th Cir. 1969), vacated per curiam, 400 U.S. 542, 90 S.Ct. 496, 27 L.Ed.2d 613 (1971), a Title VII case in which the employer was willing to hire men with preschool age children for a certain position but not women, brought out the discriminatory nature of the regulation in these terms:

The distinguishing factor seems to be motherhood versus fatherhood. The question then arises: Is this sex-related? To the simple query the answer is just as simple: Nobody—and this includes Judges, Solomonic or life-tenured—has yet seen a male mother. A mother, to oversimplify the simplest biology, must then be a woman.

So also in our case we have a regulation which bears down upon the person involved because she is a woman.

The Sixth Circuit has also considered the question in La Fleur v. Cleveland Bd. of Educ., 465 F.2d 1184 (6th Cir. 1972), wherein the regulation provided for maternity leave to be effective not less than five months before the expected date of the normal birth of the child. Certain other regulations which were not condemned required that notice be given of the condition and also that the notice be given two weeks before the effective date of the leave of absence. A great deal of evidence had been taken by the trial court and much of this had sought to justify the regulation, i. e., to show a rational basis for it. The court rejected these efforts saying that the rule was inherently based upon a classification by sex. The court (Judge Edwards writing) went on to mention the obvious truth that "male teachers are not subject to many types of illnesses and disabilities." The court continued:

This record indicates clearly that pregnant women teachers have been singled out for unconstitutionally unequal restrictions upon their employment. Additionally, as we have observed, the rule is clearly arbitrary and unreasonable in its overbreadth. As the Supreme Court said in Wieman v. Updegraff, 344 U.S. 183, 73 S.Ct. 215, 97 L.Ed. 216 (1952):

"We need not pause to consider whether an abstract right to public employment exists. It is sufficient to say that constitutional protection does extend to the public servant whose exclusion pursuant to a statute is patently arbitrary or discriminatory." Id. at 192, 73 S.Ct. at 219.

465 F.2d at 1188.

The Fourth Circuit had a similar regulation before it in Cohen v. Chesterfield County School Bd., 5 EPD ¶ 7967 (4th Cir. 1972), rev'd en banc, 474 F.2d 395. In this case the regulation provided for the maternity leave to commence no later than the fifth month of pregnancy. A majority of the court in an opinion written by Chief Judge Haynsworth upheld the regulation as a reasonable classification. Judge Winter wrote the minority opinion which argued that the provision was discriminatory and in violation of the equal protection clause of the Fourteenth Amendment since there was neither medical reason nor administrative justification for the regulation; that there existed no valid reason for treating maternity leave differently from any other medical leave or any other medical disabilities. It is important to note that a full evidentiary hearing had been held and it thus differs from our situation in which the cause was summarily dismissed.

Appellees also rely on Schattman v. Texas Employment Comm'n, 459 F.2d 32, 42 (5th Cir. 1972), cert. denied, 409 U.S. 1107, 93 S.Ct. 901, 34 L.Ed.2d 688. This case is factually different from ours in that the person was given a maternity leave instead of being discharged, and the leave commenced not later than two months before the expected delivery date. At least some effort was apparent in that case to develop a provision bearing some relationship to the realities of the pregnancy, and here also an extensive evidentiary hearing was had. In our case the policy of the Board appears drastic and categorical.

■ The classification here is at least susceptible to the charge leveled against it by appellant, namely, that it discriminates invalidly against womanhood,[2] and that it invades plaintiff's privacy by requiring her to choose between employment and pregnancy, thus curtailing her interest in having a child —an interest recognized as constitutional in Skinner v. Oklahoma, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942). *Skinner* saw the interest in procreating as a basic one which is within the protection of the Fourteenth Amendment.[3]

■ The remaining question is whether in determining the validity of the policy under consideration the trial court should apply the rational basis test enunciated in Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d

491 (1970) or the compelling state interest test of Shapiro v. Thompson, *supra*. *See also* Dunn v. Blumstein, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972). We conclude that the state must demonstrate a compelling interest in order to justify its policy because the interest involved is a fundamental one in that 1) it concerns the acknowledged right of the plaintiff to bear children, and 2) it demands that a school teacher select either employment or pregnancy. In holding that compelling interest is the applicable test, we have in mind the matters just mentioned, plus the fact that plaintiff has alleged that her race was a factor in the application of this policy—that white teachers are not subjected to it in every instance. This is an allegation that must be supported by evidence in order to be entitled to recognition, but if it is true the compelling state interest approach is the appropriate one.

## II.

■ The trial court was also in error when it summarily disposed of this action, notwithstanding appellant's allegation that the maternity regulation cloaks a more deep-seated policy of racial discrimination as well as reprisal resulting from appellant's First Amendment activities regarding library acquisitions. She is entitled to prove these charges, for it cannot be questioned that a teacher's exercise of First Amendment rights is not to be used as a ground for dismis-

2. *See* Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969), and *see also* Williams v. San Francisco Unified School Dist., 340 F.Supp. 438, 442–443 (N.D.Cal.1972).

3. Justice Douglas wrote in *Skinner*:
We are dealing here with legislation which involves one of the basic civil rights of man. Marriage and procreation are fundamental to the very existence and survival of the race.
*Id.* at 541, 62 S.Ct. at 1113.
And as the Court stated in Eisenstadt v. Baird, 405 U.S. 438, 92 S.Ct. 1029, 1038, 31 L.Ed.2d 349 (1972):
If the right of privacy means anything, it is the right of the *individual*, married

or single, to be free from unwarranted governmental intrusion into matters so fundamentally affecting a person as the decision whether to bear or beget a child. *Cf.* Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (January 23, 1973), holding that the right of privacy protected by the Fourteenth Amendment includes the woman's right to terminate her pregnancy. If the right to maintain freedom from interference with terminating a pregnancy is a right of the magnitude described by the Supreme Court in *Wade*, certainly the interests here involved is entitled to at least similar recognition.

sal from public employment. *See* Pickering v. Board of Educ. of Tp. H. S. Dist. 205, 391 U.S. 563, 574, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 2698, 33 L.Ed.2d 570 (1972).

■ While it is true that the appellant does not have a constitutional right to continue public employment, it cannot be gainsaid that she does have the right to be free from the imposition of unconstitutional conditions in connection with that employment. Pickering v. Board of Educ., *supra,* 391 U.S. at 568, 88 S.Ct. 1731; Keyishian v. Board of Regents, 385 U.S. 589, 605–606, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967); Slochower v. Board of Higher Educ. of City of N. Y., 350 U.S. 551, 76 S.Ct. 637, 100 L.Ed. 692 (1956).

### III.

■ Appellant has also alleged that notwithstanding the school policy considered above, the defendants have allowed white teachers to take maternity leaves, whereas her employment was terminated. Appellant claims that this of itself constituted racial discrimination and violation of the equal protection clause of the Fourteenth Amendment, as well as the Civil Rights Act. Having no evidence with which to judge this contention, and we do not attempt to do so, we merely recognize the obvious principle that racially discriminatory practices violate the Fourteenth Amendment and the civil rights statutes which have been cited above. *See* Chambers v. Hendersonville City Bd. of Educ., 364 F.2d 189, 193 (4th Cir. 1966). *See also* Haney v. County Bd. of Educ. of Sevier County, 429 F.2d 364, 371 (8th Cir. 1970); Wall v. Stanly County Bd. of Educ., 378 F.2d 275, 278 (4th Cir. 1967). Whether there has been a violation of the nature charged can only be determined from a consideration of the evidence offered. On remand the trial court should examine the facts and circumstances bearing on whether the policy in question has been employed in a discriminatory manner toward black teachers.

### IV.

■ The appellant's final contention is that she was denied procedural due process by the school system when it denied her a hearing. *See* Perry v. Sindermann, *supra,* and Board of Regents of State Colleges v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). This issue is moot at this point since the case has proceeded beyond the administrative stage.

Similarly, injunctive relief would no longer be of any value. Appellant has, however, made a claim for damages for violation of her constitutional rights and this claim has not been determined.

The judgment of the district court is reversed and the cause remanded for further proceedings consistent with the views expressed herein.