Janet R. SCOTT, Individually and on behalf of all others similarly situated, Plaintiff,

v.

OPELIKA CITY SCHOOLS et al., Defendants.

Civ. A. No. 74-5-E.

United States District Court, M. D. Alabama, E. D.

May 6, 1974.

Susan Williams Reeves, Birmingham, Ala., and David Tatel, Washington, D. C., for plaintiff.

Vaughan Hill Robison, Robison, Belser, Brewer & Phelps, Montgomery, Ala., for defendants.

## OPINION

JOHNSON, Chief Judge.

Plaintiff Mrs. Janet R. Scott brings this class action on behalf of herself and all other female employees of the defendants who are forced to discontinue

their employment because of pregnancy. Specifically, plaintiff seeks a preliminary injunction against the use of a mandatory maternity leave policy that requires a pregnant teacher to discontinue her employment after her seventh month of pregnancy regardless of her physical capability to perform her duties for a longer period. In addition, plaintiff seeks relief from defendants' policy that treats maternity disabilities differently from other forms of medical disabilities in the allowance of sick leave. Jurisdiction in this Court is predicated on 28 U.S.C. §§ 1343(3, 4), 2201 and 2202, and suit is brought pursuant to 42 U.S.C. § 1983.

On February 28, 1974, a hearing was held on plaintiff's request for a preliminary and permanent injunction. At that time, this Court granted defendants' motion for summary judgment on the mandatory leave feature of defendants' maternity policy.[1] Because Mrs. Scott's claim on the mandatory leave feature had been rendered moot by defendants' change in policy, this Court also ruled that Mrs. Scott did not have standing to represent other members of her proposed class who were affected by defendants' arbitrary maternity leave cut-off date.[2] Plaintiff now moves for reconsideration of this Court's decision to deny Mrs. Scott standing to represent other members of her proposed class on this question. Not only is this Court convinced that the original basis for its ruling is correct, but it also appears that plaintiff has failed to satisfy another requirement of Rule 23: the class is so numerous that joinder of all members is impracticable. See generally 3B Moore's Federal Practice ¶ 23.05 (1969). The parties have agreed that only four women have been affected by defendants' mandatory maternity leave policy since March 24, 1972—the established cut-off date for this litigation. Under these circumstances—where joinder is clearly feasible—a class action is unnecessary to render relief to the four women who may have been damaged by defendants' old maternity policy. Accordingly, plaintiff's motion for reconsideration of this Court's ruling on Mrs. Scott's standing to represent other members of this subclass for purposes of obtaining a damage award will be denied.

---

1. In response to the Supreme Court's decision in Cleveland Board of Education v. LaFleur, 414 U.S. 632, 94 S.Ct. 791, 39 L. Ed.2d 52 (1974), the defendants issued a new maternity leave policy on February 11, 1974, that eliminated the mandatory seven month cut-off provision for its pregnant teachers. Defendants now provide for an individual determination of the question of when a teacher should begin her maternity leave. Mrs. Scott was notified on February 15, 1974, that this change had been implemented and that she would be allowed to continue teaching until March 31, 1974—the date Mrs. Scott had originally requested for her maternity leave to begin. Thus, this change rendered Mrs. Scott's claim moot as to the mandatory cut-off date of defendants' maternity policy.

2. The Court's ruling was based on those cases holding that a named plaintiff can sue on behalf of a class only if he has been personally affected by or actually has suffered from defendant's allegedly discriminatory actions. See, e. g., Bailey v. Patterson, 369 U.S. 31, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962); Palmer v. Thompson, 391 F.2d 324 (5th Cir. 1967), affirmed on other grounds, 403 U.S. 217, 91 S.Ct. 1940, 29 L.Ed.2d 438 (1971). Because defendants' change in their policy was apparently made in good faith following the Supreme Court's decision in *LaFleur*, this case is not controlled by the cases holding that satisfaction of the named plaintiff's claim—because the grievance has been rectified or because plaintiff is no longer subject to the alleged discrimination—will not render the grievances of the entire class moot for purposes of abating the class action. See, e. g., Smith v. Young Men's Christian Ass'n of Montgomery, 462 F.2d 634, 645–646 (5th Cir. 1972); Potts v. Flax, 313 F.2d 284, 289 (5th Cir. 1963). Mrs. Scott has not been damaged by defendants' policy, and there is no reason why those individuals—only four in number—who have been affected by defendants' past policy cannot bring their own claims for damages.

The remaining controversy in this case stems from the Board's policy of treating maternity disabilities differently from other causes of sick leave. This aspect of defendants' maternity leave policy was not altered by the February 11, 1974, change,[3] and consequently plaintiff continues her challenge on this point. It is her position that such treatment of maternity disabilities has no rational basis and is thus a violation of 42 U.S.C. § 1983 and the Fourteenth Amendment. As it appears that plaintiff and other members of her class are similarly subjected to defendants' policy of treating maternity disabilities differently from other causes of sick leave, plaintiff's class action feature is properly maintainable on this point.

■ Although some controversy has centered on the question of whether sex is a suspect category for purposes of equal protection analysis,[4] plaintiff's charge of sex discrimination can be dealt with under traditional equal protection analysis—thereby making it unnecessary to reach the question of whether sex-based classifications demand a stricter standard of judicial re-

view under the Fourteenth Amendment. Under traditional equal protection analysis, a court will scrutinize a particular classification to determine if it is "reasonable, not arbitrary, and . . . rest[s] upon some ground of difference having a fair and substantial relation to the object of the legislation."[5] Clearly, defendants' policy of denying sick leave benefits to pregnant employees adversely affects women on the basis of their sex. Therefore, to prevail, defendants must demonstrate that their policy of treating maternity disabilities differently from other medical disabilities has a rational relationship to some legitimate state purpose.

■ Defendants have offered no valid justification for their policy.[6] Rather, they seem content to rest on their conclusion that "pregnancy is not a sickness." Of course defendants' sick leave policy is not simply limited to persons who have become "sick." The policy also includes persons suffering from disabilities by reason of an "injury" that results in some temporary physical impairment.[7] Thus, even if defendants

3. Defendants' new policy does provide that "[a]ccumulated sick leave may be used when the employee's physical condition warrants it." According to defendants, this provision would allow a pregnant employee who becomes sick from her pregnancy prior to her authorized maternity leave to receive sick leave. However, accumulated sick leave may not be applied during the maternity leave for disabilities near the time of or connected with delivery. Thus, under defendants' policy, maternity disabilities are treated differently from other medical disabilities.

4. See Frontiero v. Richardson, 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973) ; Reed v. Reed, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed. 2d 583 (1971).

5. Reed v. Reed, 404 U.S. 71, 76, 92 S.Ct. 251, 254, 30 L.Ed.2d 225 (1971), *quoting* F. S. Royster Guano Co. v. Virginia, 253 U.S. 412, 415, 40 S.Ct. 560, 64 L.Ed. 989 (1920).

6. Although defendants discussed the financial burden that would be placed on the Board by extending sick leave to pregnancy related disabilities, the evidence fails to show that

defendants' policy is financially motivated. Defendants could just as easily save money by denying their employees the right to use accumulated sick leave for a variety of long-term disabilities. Under such a policy the Board could save the costs of a substitute teacher whenever it appeared that a teacher would be absent over a certain number of days. However, the only type of disability that defendants have chosen to exclude from their sick leave policy—maternity related disability—uniquely affects women. Defendants thus must offer some rational basis for this distinction.

7. Defendants assert in their post-trial brief that any person having a "voluntary" operation which results in disability would be denied sick leave benefits. However, the Board has presented no evidence to clarify this position. It is also unclear whether the Board would attempt to deny sick leave to persons who elect to have corrective treatment although the type of condition allows the patient some flexibility in choosing the timing of his absence. Obviously there are a variety of physical disabilities, not resulting

could establish that pregnancy is not a sickness as that term is commonly defined, reliance on such a label misses the real issue: whether pregnancy related disabilities are sufficiently different from other forms of physical disabilities to support defendants' system of classification. No one disputes the fact that childbirth is physically disabling and renders a woman temporarily incapable of performing ordinary work. In explaining defendants' policy, Dr. Clyde Zeanah, Superintendent of the Opelika City Schools, contended that "if a person is not capable of performing their work because of their health, they are granted sick leave." Certainly a woman in childbirth should qualify for sick leave under this reasoning. This inconsistency in explanation and policy underscores the lack of rationality in defendants' policy. In light of the evidence presented, defendants have failed to establish any persuasive justification for their policy of excluding maternity related disabilities from their general scheme of sick leave.

Several other courts that have faced similar policies of classifying maternity disabilities separately from other medical disabilities have held such classifications invalid.[8] For example, in Aiello v. Hansen,[9] a three-judge court ruled that California's disability insurance program excluding pregnancy related work loss from its otherwise general coverage of medical disabilities was a violation of the Equal Protection Clause.

Pregnancy is clearly a unique human condition: only pregnancy can result in the birth of a child. For a woman, however, the effects of pregnancy and pregnancy-related illness are debilitating in much the same way as the physical and mental conditions that are included within the scope of the disability insurance program. The question whether the exclusion of pregnancy-related disabilities from the program is arbitrary or rational depends upon whether pregnancy and pregnancy-related illness substantially differ from the included disabilities in some manner relevant to the purposes of the disability insurance program.

Rejecting the state's contention that such a classification is necessary to protect the program's solvency, the court found that there was no rational difference between maternity and other medical disabilities.[10]

 Two recent cases invalidating schemes which treated maternity disabil-

---

from some "sickness," that would normally be considered sufficient impairment to support justifiable absence from work. See Defendant Zeanah's explanation of the Board's policy. Consequently, defendants' reliance on the rubric "sick" fails to offer a realistic description of their policy.

8. See Buckley v. Coyle, 476 F.2d 92 (10th Cir. 1973); Gilbert v. General Electric, Civil No. 142–72–R, 375 F.Supp. 367 (E.D.Va. 1974); Aiello v. Hansen, 359 F.Supp. 792 (N.D.Cal.1972) (three-judge court); Wetzel v. Liberty Mutual Ins. Co., 372 F.Supp. 1146 (W.D.Pa.1974); Cedar Rapids Community School District v. Parr, 6 [CCH] EPD ¶ 8789 (Iowa Dist.Ct., May 25, 1973). But see Newmon v. Delta Airlines, Inc., 374 F. Supp. 238 (N.D.Ga.1974), in which the court treated the issue as one of first impression. Like the defendants' contention in this case, the court resorted to what it considered a commonsense conclusion that "pregnancy is neither a sickness nor a disability." This Court,

however, is unable to find that pregnancy in at least its final stages is not a "disability." Accord, Wetzel v. Liberty Mutual Ins. Co., 372 F.Supp. 1146 (W.D.Pa.1974) (denying motion to reconsider).

9. 359 F.Supp. 792 (N.D.Cal.1972) (three-judge court).

10. The court rejected any notion that pregnancy was in some way different because it was a voluntary condition. Id. at 800. Accord, Buckley v. Coyle Public School System, 476 F.2d 92, 95 (10th Cir. 1973). "The fact, if it be a fact, that pregnancy is a voluntary status really has nothing to do with the question. The point is that the regulation penalizes the feminine school teacher for being a woman and, therefore, it must be condemned on that ground." Although Buckley relied on new equal protection analysis, there is nothing in the court's opinion to imply that its result would be any different under traditional equal protection scrutiny.

ities differently from other causes of sick leave were based on Title VII.[11] And while this Court must base its decision on 42 U.S.C. § 1983 because plaintiff's Title VII claims are presently before the Equal Employment Opportunity Commission, the Title VII cases are illuminating because of the law's clarity on this question. The most explicit statement is found in the EEOC Guidelines on Sex Discrimination, 29 C.F.R. § 1604.10.

> Disabilities caused or contributed to by pregnancy, miscarriage, abortion, childbirth, and recovery therefrom are, for all job-related purposes, temporary disabilities and should be treated as such under any health or temporary disability insurance or sick leave plan available in connection with employment.[12]

If this case were being litigated under Title VII, defendants' maternity leave treatment would be unable to stand.[13] Given defendants' failure to offer any rational justification for its policy, this result is equally called for under Section 1983.

■ Accordingly, plaintiff is entitled to a permanent injunction enjoining defendants from excluding maternity related disabilities from their sick leave policy. Those employees of defendants who, since March 24, 1972, have been denied the right to use their accumulated sick leave for maternity related disabilities are also entitled to further equitable relief. Normally these persons would be entitled to recover the amount of pay they would have received if they had used their accumulated sick leave at the time of their pregnancies. However, it has been brought to the Court's attention that some of plaintiff's class may prefer to retain their accumulated sick leave rather than collect the amount they could have received and suffer a reduction in the amount of sick leave they have presently accumulated. Therefore, this Court concludes that these members of plaintiff's class should be given the choice of immediately recovering a monetary award representing the accumulated sick leave they could have taken at the time of their pregnancies or retaining their present number of accumulated sick days unaffected by defendants' past policy.

■ Plaintiff also prays for an award of an attorney's fee. This Court has often discussed the rationale for such an award where plaintiffs serve as "private attorneys general." [14] And, like class actions brought to curb racial discrimination, class suits aimed at eliminating sexual discrimination similarly effectuate a strong Congressional policy. Thus, this case is appropriate for an award of an attorney's fee. Accordingly, within 15 days both parties should submit affidavits from practicing attorneys within this area regarding a reasonable attorney's fee in this case. Parties and affiants should consider the criteria for evaluating an appropriate award recently enumerated by the Fifth Circuit in Johnson v. Georgia Highway Express, 488 F.2d 714 (5th Cir. 1974).

---

11. See Gilbert v. General Electric, Civil No. 142–72–R, 375 F.Supp. 367 (E.D.Va.1974); Wetzel v. Liberty Mutual Ins. Co., 372 F. Supp. 1146 (W.D.Pa.1974).

12. Other cases under Title VII dealing with this same issue have been resolved by the EEOC on the basis of the EEOC guidelines. See [CCH] EMPLOYMENT PRACTICES GUIDE ¶ 1310. Of course these guidelines do not have statutory force, but they are persuasive authority for a court to consider.

13. "Pregnancy is a condition limited to women. Conditions limited to men, such as prostate troubles, are not excluded, nor is any exclusion provided for a number of illnesses whose incidence among males is greatly predominant (i. e. gout 19 to 1; the Merck Manual, 10th ed. 1961) . . . . There is nothing in this record to show, and nothing in our general experience with life indicates that the job-related incidence of disability for pregnancy is any greater or any less than that for a prostatectomy." Wetzel v. Liberty Mutual Ins. Co., 372 F.Supp. 1146, at 1162 (W.D.Pa.1974).

14. See, e. g., Wyatt v. Stickney, 344 F.Supp. 387, 409 (M.D.Ala.1972); NAACP v. Allen, 340 F.Supp. 703, 708–710 (M.D.Ala.1972); Sims v. Amos, 340 F.Supp. 691, 694 (M.D. Ala.1972) (three-judge court).