

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN, TEXAS 78711

JOHN L. HILL
ATTORNEY GENERAL

March 4, 1974

The Honorable Joe Allen, Chairman　　　　Opinion No. H- 251
Committee on House Administration
House of Representatives　　　　　　　　Re:　Questions relating to
Austin, Texas 78711　　　　　　　　　　　　　the rights of women
　　　　　　　　　　　　　　　　　　　　　　employed by the State

Dear Representative Allen:

Your letter, submitted at the request of the Committee on House Administration, asks a number of questions concerning maternity policies of the Legislature and other branches of the State Government. Your first question asks:

> "May the employment of a female state employee
> be legally terminated merely because she is pregnant?
> If so, at what point in the pregnancy and under what
> conditions may the employment be terminated?"

We are unaware of any state-wide policy with reference to the termination of employment of women employees because of pregnancy, and we understand that departmental policies may vary from the extreme of no policy at all to the opposite pole of one department which advises that, until recently, its policy dictated that "at the end of six months of pregnancy a condition of temporary disability will be considered to exist." The employee is allowed to exhaust accumulated vacation time, compensatory time and sick leave, all of which are usually insufficient to cover the period before the child is born. After child birth, this department considers the employee available for rehire as soon as there exists a vacancy.

The Appropriation Act for fiscal 1974 and 1975 (Laws 1973, 63rd Leg., ch. 659, p. 1786) in its Article V; § 7(b) (p. 2200) recognizes pregnancy and confinement as a basis for temporary leave, not complete termination. It provides:

> "Sick leave with pay may be taken when
> sickness, injury, or pregnancy and confinement
> prevent the employee's performance of duty. . . .
>
> " . . . .
>
> "Exceptions to the amount of sick leave an
> employee may take may be authorized by the admin-
> istrative head or heads of an agency of the State
> provided such exceptions are authorized on an
> individual basis after a review of the merits of
> such particular case."

Prior to 1972 it was the established policy of the Texas State Employ-
ment Commission to require that pregnant employees take a maternity
leave of absence without pay no later than two months before the expected
date of delivery.  Reinstatement at the end of the leave was not automatic.
This policy was upheld as reasonable under the Equal Protection Clause of
the Fourteenth Amendment in Schattman v. Texas Employment Commission,
459 F. 2d 32 (5th Cir. 1972), cert denied 409 U.S. 1107, the Court also
holding that the sex discrimination provisions of Title VII of the Civil Rights
Act of 1964 (42 USC § §2000e, et seq.) did not apply to the Commission
because it was an expressly excluded State agency.

Other Courts of Appeals ruled differently.  See, for instance, Green
v. Waterford Board of Education, 473 F. 2d 629 (2d Cir., 1973); Buckley
v. Coyle Public School System, 476 F. 2d 92 (10th Cir. 1973).  This conflict
prompted the United States Supreme Court to grant certiorari in two cases
involving school board policies requiring separation of teachers either 5
months before birth, in one instance, or 4 months before in the other.
Cleveland Board of Education v. LaFleur, ___U.S.___, 42 LW 4186 (Jan. 21,
1974).

The Court, in the majority opinion by Justice Stewart, stated the
question before it as follows:

>"This Court has long recognized that freedom of personal choice in matters of marriage and family life is one of the liberties protected by the Due Process Clause of the Fourteenth Amendment. Roe v. Wade, 410 U.S. 113; Loving v. Virginia, 388 U.S. 1, 12; Griswold v. Connecticut, 381 U.S. 479; Pierce v. Society of Sisters, 268 U.S. 510; Meyer v. Nebraska, 262 U.S. 390. See also Prince v. Massachusetts, 321 U.S. 158; Skinner v. Oklahoma, 316 U.S. 535. As we noted in Eisenstadt v. Baird, 405 U.S. 438, 453, there is a right 'to be free from unwarranted governmental intrusion into matters so fundamentally affecting a person as the decision whether to bear or beget a child.'

>"By acting to penalize the pregnant teacher for deciding to bear a child, overly restrictive maternity leave regulations can constitute a heavy burden on the exercise of these protected freedoms. Because public school maternity leave rules directly affect 'one of the basic civil rights of man,' Skinner v. Oklahoma, supra, at 541, the Due Process Clause of the Fourteenth Amendment requires that such rules must not needlessly, arbitrarily, or capriciously impinge upon this vital area of a teacher's constitutional liberty. The question before us in these cases is whether the interests advanced in support of the rules of the Cleveland and Chesterfield County School Boards can justify the particular procedure they have adopted." (42 LW at 4189) (emphasis added)

It concluded that the mandatory "cut-off" dates had no rational relationship to any valid state interests of continuity of teaching since, in some instances, it could have the opposite effect. As to the goal of maintaining healthy teachers in the classroom, the Court pointed to the fact that the medical witnesses agreed unanimously that the ability of any one pregnant woman to continue at work past any fixed time in her pregnancy is very much an individual matter. "Thus, the conclusive presumption embodied in these rules. . . is neither 'necessarily nor universally true,' and is violative of the Due Process Clause." (42 LW at 4190)

The Court's decision, however, cannot be read as condemning out of hand all rules requiring separation of an employee at a certain, fixed time before delivery. In a footnote to its holding, the Court said:

> "This is not to say that the only means for providing appropriate protection for the rights of pregnant teachers is an individualized determination in each case and in every circumstance. We are not dealing in these cases with maternity leave regulations requiring a termination of employment at some firm date during the last few weeks of pregnancy. We therefore have no occasion to decide whether such regulations might be justified by considerations not presented in these records— for example, widespread medical consensus about the 'disabling' effect of pregnancy on a teacher's job performance during these latter days, or evidence showing that such firm cut-offs were the only reasonable method of avoiding the possibility of labor beginning while some teacher was in the classroom, or proof that adequate substitutes could not be procured without at least some minimal lead time and certainty as to the dates upon which their employment was to begin. " (footnote 13, 42 LW at 4191)

As to when an employee may return to work after delivery, the Court in La Fleur struck down as unconstitutionally arbitrary and irrational a requirement of the Cleveland Board of Education that return could not be effected until at least three months after delivery. The Court upheld the requirement of a medical certificate.

The facts involved in La Fleur took place prior to the 1972 amendments to Title VII of the Civil Rights Act making those provisions applicable, with certain exceptions, to state agencies and educational institutions. The Court recognized that development lessened the impact of its decision which was rendered on constitutional rather than statutory grounds (footnote 8, 42 LW at 4188).

The Civil Rights Act of 1964 in its § 703 (42 USC, § 2000e-2) provides, in part:

> "(a) It shall be an unlawful employment practice for an employer —
>
> "(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
>
> "(2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin. "

Pursuant to the authority granted it in § 713(b) of the Act (42 USC, § 2000e-12) the Equal Employment Opportunity Commission has issued guidelines as follows (29 CFR § 1604.10):

> "§ 1604.10 Employment policies relating to pregnancy and childbirth.
>
> "(a) A written or unwritten employment policy or practice which excludes from employment applicants or employees because of pregnancy is in prima facie violation of Title VII.
>
> "(b) Disabilities caused or contributed to by pregnancy, miscarriage, abortion, childbirth, and recovery therefrom are, for all job-related purposes, temporary disabilities and should be treated as such under any health or temporary disability insurance or sick leave plan available in connection with employment. Written and unwritten employment policies and

practices involving matters such as the commencement and duration of leave, the availability of extensions, the accrual of seniority and other benefits and privileges, reinstatement, and payment under any health or temporary disability insurance or sick leave plan, formal or informal, shall be applied to disability due to pregnancy or childbirth on the same terms and conditions as they are applied to other temporary disabilities.

"(c) Where the termination of an employee who is temporarily disabled is caused by an employment policy under which insufficient or no leave is available, such a termination violates the Act if it has a disparate impact on employees of one sex and is not justified by business necessity."

The answer to your first question, therefore, would appear to be that employment of a female state employee may not be legally terminated merely because she is pregnant, if by "terminate" you mean a complete ending. On the other hand, an agency may adopt a policy, based on reasonable factual findings, requiring a pregnant woman to take a leave of absence when her health would be endangered or her job performance would be impaired by her remaining on the job. And other reasonable regulations, such as the requirement of notice, may be required, provided they are required of all temporarily disabled persons.

The decision as to when that should be will have to be determined on a case-by-case basis unless there is sufficient unanimity among the medical community that a "reasonable" date prior to delivery could be agreed upon.

Your second question asks:

"If your answer to the first question is yes, and a female employee is dismissed because of her pregnancy:

"a. What are her rights with regard to accrued vacation and sick leave?

"b. What are her rights with regard to future employment with the state, especially with the agency or office where she was previously employed?

"c. If she is subsequently employed by the same or another state agency or office, what rights would she have with regard to job classification, rate of compensation, retirement benefits, and other job benefits?"

The answer to these is simply that pregnancy and childbirth may not be treated as different from any other sort of temporary disability. A pregnant woman, upon taking leave of absence to have her child, should be allowed to exhaust her vacation time and sick leave and, if it is the agency's policy to extend sick leave in the event of other types of temporary disability, she should be entitled to similar consideration.

The pregnant woman's right to future employment in the same or any other state agency, her rights to job classification, compensation, retirement benefits, and other job benefits should be determined exactly as if her leave were occasioned by an injury or illness.

Your third question asks:

"If your answer to the first question is no, and a female employee is dismissed because of pregnancy:

"a. What are her rights with regard to reinstatement, damages, and other relief?

"b. If she is subsequently employed by the same or another state agency or office, what rights would she have with regard to job classification, rate of compensation, retirement benefits, and other job benefits?"

An employee who has been separated from state employment because of an unconstitutional employment policy, will be entitled to certain remedies depending upon the facts of each case.  No definite rule may be stated, but remedies might include reinstatement with or without back pay, back pay without reinstatement, and/or other remedies made legally appropriate by the circumstances of a given case.

Your fourth question is:

"May state agencies and offices grant temporary leaves of absence without any pay to pregnant female employees, and at the end of such leave, reinstate such employees in the same job classification and at the same rate of compensation that they previously held?"

We think our answers to the first and second questions answer your fourth.  Basically, the pregnant woman should be accorded the same rights given other employees absent from work for temporary disability.

## SUMMARY

1.  Employment of a state employee may not be terminated merely because she is pregnant.

2.  Where it is factually established that it is unhealthy for the woman or impairs her job for a pregnant woman to continue working, she may be required to take a leave of absence.  The determination is to be made on an individual basis unless there is unanimity among medical experts as to a "reasonable" date.

3.  As to the terms of a pregnant woman's leave of absence and her rights to future employment, her rights to job classification, compensation and retirement, they are to be determined on the same basis as are those of any temporarily disabled employee.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

The Honorable Joe Allen, page 9 (H-251)

APPROVED:

LARRY R. YORK, First Assistant

DAVID M. KENDALL, Chairman
Opinion Committee