**Phil G. ROCHE, Plaintiff,**

**v.**

**Alvin FOULGER et al., Defendants.**

**No. NC 37–73.**

United States District Court,
D. Utah, N. D.

April 21, 1975.

Raymond S. Uno, Salt Lake City, Utah, for plaintiff.

L. Kent Bachman, Ogden, Utah, for defendants.

## MEMORANDUM IN LIEU OF FINDINGS OF FACT AND CONCLUSIONS OF LAW

ALDON J. ANDERSON, District Judge.

Plaintiff Phil Roche filed a complaint in the above-entitled action, claiming that his dismissal from the Ogden City Police Department was in violation of his constitutional rights and thus provided a cause of action under 42 U.S.C. § 1983. Named as defendants were Alvin Foulger, a Captain in the Ogden City Police Department who had direct supervision over Roche at the time of his dismissal, LeRoy Jacobsen, the police chief of the Ogden City Police Department, and Richard Larsen, the Ogden

City Manager at the time of the dismissal. The complaint's primary assertion of unconstitutionality rests on the claim that Roche received discriminatory treatment and was dismissed because of his Mexican-American race. A non-jury trial of this action commenced on March 18, 1975, and concluded on March 21, 1975.

Plaintiff's case, as finally presented to the court, consisted of the claimed denial of equal protection rights based on the alleged racially discriminatory dismissal and a claimed denial of due process rights due to his summary dismissal. Having considered the evidence presented and the appropriate controlling legal authorities, the court is prepared to enter this memorandum in lieu of findings of fact and conclusions of law.

## I.

Plaintiff Roche's chief claim is that his dismissal was the result of racial discrimination on the part of the named defendants. In support of that claim, Roche produced evidence of the hiring practices of the Police Department and Ogden City, the number of minority employees during the relevant time both of the Police Department and the City, and the City's lack of affirmative action programs for minorities, particularly recruitment. In addition, the plaintiff presented evidence of other instances of misconduct by police officers of equal or greater severity, which had resulted in less stringent disciplinary measures.

■■ With regard to the statistical evidence presented by the plaintiff, it is clear that actions under § 1983 for racial discrimination contemplate the possibility of proving such discrimination by numerical comparisons. However, the inferences to be drawn from such statistics must result from substantial discrepancies, either from comparing employment totals with population totals or by other statistically demonstrable unequal employment practices, such as promotions or dismissals. *See Bridgeport Guardians, Inc. v. Members of*

*Bridgeport Civil Service Comm'n,* 482 F.2d 1333, 1335 n. 4 (2d Cir. 1973). Moreover, the *Bridgeport Guardians* decision indicated that a "mere discrepancy" does not raise such an inference, but only invites further inquiry. In that case, the Second Circuit held that the discrepancy in the percentage of blacks taking the exam versus the percentage passing raised a prima facie case that the exam had a racially discriminatory impact, but the court concluded with regard to the claims of discrimination in promotion that the small numbers involved (between 20 and 30 non-whites over ten years) were insufficient to justify an inference of discrimination. Other cases have based conclusions of racially discriminatory employment practices on small numbers when the statistical evidence was appropriately persuasive. For example, in *Chambers v. Hendersonville City Board of Education,* 364 F.2d 189 (4th Cir. 1966), the Fourth Circuit held that the reduction of black school teachers from twenty-four to eight by a previously segregated school district raised an inference of racial discrimination, and shifted to the school district the burden of justifying its conduct by clear and convincing evidence.

■ In this case, the evidence presented by Roche was not sufficient to raise an inference of racial discrimination by the Police Department or Ogden City. The statistical evidence of minority employees did not reveal a substantial discrepancy either in hiring or in other kinds of employment practices. There was no evidence supporting a claim that any of the defendants acted in a racially discriminatory fashion, either by evidence of philosophy or conduct. Nor did the showing relative to the degree or absence of affirmative action programs for the recruitment of minorities raise such an inference. Finally, although plaintiff Roche did present evidence tending to indicate that other police officers had received different, and in some instances, seemingly more favorable treat-

ment than accorded to him in the dismissal event, there is nothing to indicate that the different treatment was the result of racial discrimination.

Since the plaintiff has failed to meet his burden of proof on the issue of whether there was racial discrimination, the court must determine by what standard his equal protection claims should be evaluated in light of the different treatment which he claims to have received in the disciplinary action taken. A showing of racial discrimination would trigger the "suspect classification-compelling state interest" test, which imposes a heavy burden, seldom met, upon the state. *See Loving v. Virginia,* 388 U.S. 1, 9, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967). However, since there is no showing of racial discrimination, the operable standard of review would be the minimum scrutiny or "rational basis" test. *See Developments in the Law—Equal Protection,* 82 Harv.L.Rev. 1065, 1077–87 (1969). Thus, unless plaintiff can show the imposition of some other suspect classification or the infringement of a "fundamental interest," the different treatment is permissible upon any showing by the state (or local government here) of a reasonable ground or rational basis for such treatment.

The only possible claim plaintiff has for such a "compelling state interest" test is the right to public employment. However, the Supreme Court has never denominated such a right fundamental, and several Courts of Appeals, including the Tenth Circuit, have explicitly held that there was no right to public employment. *See Bridgeport Guardians, Inc. v. Members of Bridgeport Civil Service Comm'n, supra* at 1337; *Buckley v. Coyle Public School System,* 476 F.2d 92, 97 (10th Cir. 1973). Thus, defendants need only show a rational basis for their disciplinary actions vis-a-vis Roche. A recent explanation of the leniency of that standard was made by the Tenth Circuit in a challenge by American Indians to school hair length requirements. The court stated that

"[a]lthough no precise formula has been developed, the Courts have held that the Fourteenth Amendment permits the states a wide scope of discretion in enacting laws which affect some groups of citizens differently than others. The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the states' objectives."

*New Rider v. Board of Education of Indian School District No. 1, Pawnee County, Okla.,* 480 F.2d 693, 699 (10th Cir. 1973).

Translating that language in the context of Roche's claim, it can be said that local government officials and departments have a wide scope of discretion in dealing with different employees and disciplinary situations, and the equal protection rights of employees are offended only if the treatment received rests on grounds wholly or substantially irrelevant to the achievement of the department's objectives.

In this case, it appears that the department had reasonable grounds for its discharge, based upon the testimony of the defendants, which included the reasons for Roche's dismissal. The reasons for the dismissal, as explained by defendants, were that the profanity used by Roche in several dealings with citizens, and his conduct before his superior officer with a citizen present, were detrimental to the department's public relations; that Roche had on several occasions demonstrated questionable judgment or temper; and that, in the judgment of his superiors, he would not have made the kind of officer which the department was seeking. Such grounds for dismissal by a public employer are within the discretionary scope allowed by the equal protection clause.

One troubling aspect of this case is the failure of the department to discharge officers who had committed more egregious acts of misconduct. However, the treatment of other offi-

cers, while helping to define what disciplinary action is reasonable or rational, does not create a right in Roche to receive similar treatment under the equal protection clause. The state, through its departments, is not required to treat everyone identically in disciplinary actions. Nor is it possible to precisely synthesize every case in terms of every other so that punishment is mechanically perfect. The obligation is only to treat all employees reasonably and rationally. The equal protection clause precludes only wholly unreasonable or irrational treatment in such circumstances. To require identical kinds of disciplinary measures by state agencies would unnecessarily limit the latitude of discretion necessary to deal with differing individuals in an employment context. And while reasonableness is defined, to a large degree, by the general disciplinary policies of a department, as demonstrated by the handling of individual cases, there is a significant latitude in disciplinary discretion. Thus, absent prohibited grounds such as race, it is within the discretion of a state department to dismiss one employee for an offense which may have resulted in the past in lesser forms of punishment when the dismissal is reasonable in light of the facts of the case and the objectives of the department. In this case, the defendants had such reasonable grounds for dismissing Roche, and the dismissal was rationally related to department objectives.

## II.

The existence of a due process claim in this case is somewhat tenuous. The plaintiff did not explicitly set out a due process cause of action in his complaint. Nor is there a due process issue denoted in the pretrial order. However, the defendants' trial brief filed on March 14, 1975, includes a due process issue in its proposed conclusions of law, and plaintiff also lists in his proposed conclusions of law a denial of due process. Although consideration of the due process claim is not necessary from the plead-

ings, it is the court's determination to nonetheless consider it.

The due process issue raised by Roche is whether he was entitled to notice, a statement of the grounds upon which his termination was based, and a hearing prior to his termination. It is uncontested that Ogden City provides a post-termination administrative appeal procedure, which Roche originally initiated and then withdrew.

Analyses of due process claims under the Fourteenth Amendment have normally employed a balancing test in which the interests and rights of the employee, as well as the governmental interest in not terminating erroneously, are weighed against the governmental interest in summary and discretionary termination. The most helpful Supreme Court decision in this area is *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), which reviewed the due process claim of a non-tenured college teacher not rehired by his employer-university. The first step of the Court's analysis was to consider the *nature* of the plaintiff's interest in advance of evaluating that interest's *weight.* The Court indicated that a "liberty" interest might well be implicated if the result of the termination was to "seriously damage his standing and associations in his community." 408 U.S. at 573, 92 S.Ct. at 2707. The Court further discussed the possibility that a clearly implied promise of continued employment might constitute a property interest under an entitlement theory. 408 U.S. at 576–78, 92 S.Ct. at 2701. *See Connell v. Higginbotham,* 403 U.S. 207, 208, 91 S.Ct. 1772, 29 L.Ed.2d 418 (1971). In the *Roth* case, however, the Court was unable to find any evidence in the record to support either of those possibilities, and thus determined that such a hearing was not mandated by the due process provisions of the Fourteenth Amendment.

A recent Tenth Circuit decision addresses these due process issues on facts much like this case. In *Abeyta v. Town*

*of Taos,* 499 F.2d 323 (10th Cir. 1974), a number of members of the Taos police force were dismissed on various grounds, chiefly infractions of department regulations, although there was a seeming political overtone to the department's administration at the time. A primary claim by plaintiffs in the case was for denial of the due process right to a hearing prior to termination. It appears that the town's procedure in police disciplinary matters was for the department to issue a termination letter, resulting in termination, upon which the terminated officer had ten days within which to appeal the decision to the Town Council, which would then either reverse or confirm the termination decision officially. Several of the complaining terminated officers were initially suspended and finally dismissed subsequent to a general hearing. However, these officers apparently did not have, in their judgment, a sufficient opportunity for pre-termination hearing as required by the constitution. The discussion in that opinion, reflecting the general outlines of Roth, is instructive here:

> "The requirements of due process apply only to deprivation of interests encompassed within the Fourteenth Amendment's protection of 'property' and 'liberty'. . . . In this regard, public office or employment generally is held not to be a property interest within the meaning of the Fourteenth Amendment. This rule is not applicable in all situations, as where public employees hold contractual rights to continuing employment under formal tenure grounds. Summary termination of employment, under such circumstances, may well be actionable.

> However, the record does not disclose that appellants have any rights to continued employment which could constitute a property interest. They operate under no contract or commission and have no fixed term of employment, and their employment must be considered terminable at will. At best, appellants have a mere unilateral expectation of continued employment. This is not a property right encompassing due process guarantees.

> Appellants also contend that, because of the nature of the charges upon which their dismissals were based, a hearing was required before they could be deprived of their 'liberty' protected by the Fourteenth Amendment against deprivation of due process. . . . In this respect, appellants' complaint alleged that their reputations were injured and that they were consequently placed at a disadvantage in obtaining other employment.

> The charges against appellants, which can be characterized as allegations of improper job performance, are not of a nature that would stigmatize or injure their reputations, as would charges of dishonesty or immorality. Moreover, appellants have presented no evidence whatsoever to support this argument.

> Nor can we conclude that their terminations have placed appellants at a disadvantage in obtaining other employment. Several appellants have found other jobs. . . .

> Appellants have not established a deprivation of protected property or liberty interests, and therefore have no rights to a termination hearing." *Abeyta v. Town of Taos, supra* at 327–28. (Citation omitted.)

As a consequence of the *Abeyta* decision, this court must consider whether, on the evidence presented, plaintiff Roche had an expectation in continued employment sufficiently warranted by the circumstances of his position to constitute a property right, whether the nature of the dismissal was such as to injure his reputation or good standing in the community, and whether the dismissal was of such a nature as to substantially disadvantage him in securing other employment. A positive answer to any of those inquiries will result in the triggering of

some procedural guarantees under the Fourteenth Amendment.

 No evidence was presented, nor can it be inferred from the description of his job, that Roche's employment as a police officer was of a contractual nature, either express or implied. Nor was his position one that could properly be described as tenured. Nor were there any other external circumstances which would reasonably have lead Roche to have a greater-than-normal expectation of continued employment. Thus, the court must conclude that Roche did not have a property interest in continued employment.

The plaintiff also failed to introduce any evidence as to the actuality or possibility of reputational damage from the dismissal. The character of the dismissal charge was, in the court's judgment, not of the stigmatizing nature alluded to by the *Abeyta* court. While profanity may be viewed by some members of society as immoral, it is not the kind of conduct which most would characterize as "dishonest" or "immoral." Thus, the court cannot conclude that the dismissal of Roche resulted in reputational injury or stigmatization such as to affect a liberty interest under the due process clause. Finally, there is not a sufficient showing of future employment preclusion by virtue of the dismissal to constitute employment disadvantage under the *Abeyta* decision. The *Abeyta* court apparently viewed that disadvantage as relating to the entire scope of employment opportunities, and not solely to future employment of an identical kind. In this case, while it may be true that Roche's opportunity for future police enforcement employment is limited by the dismissal, the critical inquiry is whether the dismissal will have a substantially disadvantaging effect on all future employment possibilities. The court cannot conclude, on the evidence presented, that such was the consequence of Roche's dismissal. Moreover, there is not sufficient evidence on the record to conclude that Roche is substan-

tially precluded from obtaining further employment in other police departments. Thus, on the evidence presented, the court cannot say that the plaintiff had an interest protected by the due process clause which was jeopardized or injured by the conduct of the defendants.

Therefore, it is the court's determination that judgment be entered for the defendants in the above-entitled matter.